O’NIELL, C. J.
 

 This is a suit for damages for breach of contract. The plaintiff is a cotton broker, in Shreveport, La. The defendant is a corporation engaged in the mercantile business, and in buying and selling cotton, in Homer, La. Plaintiff avers that, on the 20th of September, 1922, the defendant contracted, verbally, to sell him 100 bales of
 
 cotton
 
 at 19.31% cents per pound, to be delivered not later than the 1st of December, 1922, and whenever defendant notified plaintiff of his readiness to deliver, within that time; and that defendant delivered 50 bales of cotton according to the contract on the 5th of October, 1922, but failed and refused to deliver any more cotton. Plaintiff avers that on the 13th of October, 1922, defendant made a similar contract to sell him 100 bales of cotton at 20% cents per pound, to be delivered also at any time before or on the 1st of December, but failed and refused to deliver any cotton under that contract. Plaintiff avers that the time for delivery under both contracts was, at the defendant’s request, extended to the 4th of December, 1922, on which date the market value of the cotton was 23.97 cents per pound. Plaintiff avers that repeated demands were made upon the defendant to deliver the remaining 150 bales of cotton, but, notwithstanding repeated promises on the defendant’s part to carry out the contract, defendant failed and neglected to carry it out; and that he (plaintiff) having, on the faith of the defendant’s contracts, contracted to resell the cotton at a stipulated price, was compelled to buy the 150 bales of cotton on the market and to pay the market price of 23.97 cents per pound therefor, in order to fulfill his contracts of sale. Plaintiff averred — -and it is admitted — tjhat, according to the custom of the trade, a contract for the sale of 100 bales of cotton at a stipulated price per pound, without stipulating the weight per bale or the grade of cotton, means 100 bales of an average weight of 500 pounds and grade basis middling. The amount of damages claimed is $2,899.37, which is the difference between the contract price (of 25,000 pounds at 19.31% cents and 50,000 pounds at 20% cents) and the market value, 23.97 cents per pound, on the 4th of December, 1922, the last day on which the cotton should have been delivered.
 

 Answering the suit, the defendant denied that there was a contract of date the 13th of October, 1922. Defendant denied also that there was a contract of date the 20th of September, 1922, but,,in the alternative, averred that, if the court should find that there was such a contract, of that date, defendant offered to deliver the remaining 50 bales of
 
 *791
 
 cotton to plaintiffs agent on the 5th of October, 1922, when defendant did deliver 50 bales of cotton to plaintiff’s agent.
 

 The district judge found sufficient proof of the contract of date the 20th of September, 1922, but not of a contract of date the 13th of October, 1922; and he gave the plaintiff judgment for $170.62 damages, on the theory that the contract of date the 20th of September, 1922, was breached on the 5th of October, when the defendant delivered 50 instead of 100 bales of cotton — and when the market value of the cotton was 20 cents per pound. The plaintiff has appealed from the decision; and the defendant, answering the appeal, prays that the judgment be annulled and plaintiff’s demand rejected entirely.
 

 The evidence convinces us that the allegations in the plaintiff’s petition are true in every important detail. The defendant’s plea — with reference to the alleged, contract of date the 20th.of September — that defendant offered to deliver an additional 50 bales of cotton at the time of delivering 50 bales under the contract, was virtually an admission that there was such a contract; and the evidence on the subject leaves no doubt about it. In fact, the managing member of the defendant corporation, who did all of the buying and selling of cotton for the company, admitted as a witness on cross-examination, that he had made the contract of date the 20th of September, 1922. He said that he did not remember the price that was stipulated, but that a price was stipulated, and he would not deny that the price was 19.31% cents per pound. That was the price for which he sold and delivered 50 bales of cotton under the contract.
 

 We agree with the district judge that there is no merit in the defendant’s plea that the plaintiff was put in default by an offer on the part of the defendant to deliver the remaining 50 bales of cotton on the 5th of October, 1922, when 50 bales were delivered under the contract of date the 20th of September. The process of delivery consisted of pulling a small quantity of cotton out of each bale and grading it, and putting aside each bale of graded cotton as the property of the buyer. When that was done with the 50 bales of cotton, at Homer, La., it was late in the afternoon, and the plaintiff’s representative thqn left for Shreveport. It is said that defendant offered to deliver the remaining 50 bales then or the next morning. If any such offer was made, it was merely a suggestion and was not urged as an offer to deliver; for the plaintiff was at all times ready and anxious for a delivery of the cotton. That the defendant was not absolved of the obligation to deliver the additional 50 bales of cotton, by an offer to deliver on the 5th of October, was virtually acknowledged in a telegram sent by the defendant to the plaintiff on the 6th of December, 1922; which will be referred to more in detail hereafter.
 

 Referring to the contract of date the 13th of October, 1922, the plaintiff testified that he called up the Smith Company on the telephone, from Shreveport, in the forenoon of that day, and offered to book the Smith Company for 100 bales -.of cotton at 20% cents, to be delivered on or before the 1st of December, and the manager of the Smith Company declined the offer of 20% cents but offered him the cotton at 20% cents; that he (plaintiff) asked for and was given an option at 20% cents during that day, and in the afternoon called the manager of the Smith Company again on the telephone, and accepted the offer at 20% cents. Plaintiff’s testimony is corroborated by that of a witness who heard his end of the conversation; and it is corroborated by a telegram signed by the manager of the Smith Company, addressed to plaintiff, and assuring him that the Smith Company would deliver the cotton “as per agreement.” The manager of the Smith Company, as a witness on cross-examination, first said that
 
 *793
 
 he did not remember the contract of date the 13th of October, but he afterwards remembered that there was such a transaction, and testified that, when plaintiff called him on the long distance phone and offered to book him for the cotton at a fixed price, he declined, and that plaintiff then offered and agreed to guarantee the Smith Company a margin of profit of 3 cents per pound on the cotton. In other words, the witness testified that the agreement was that the Smith Company was not to ship the 100 bales of cotton until and unless the market price dropped 3 cents per pound below the price which plaintiff was to pay for the cotton. The substance of such an agreement would be that plaintiff, without any compensating advantage or chance of gain, guaranteed to pay the Smith Company the difference between the then value of 100 bales of cotton and any lower" price that it might drop to on or before the 1st of .December — the maximum of the guarantee being $1,500 — without any corresponding obligation or chance of loss on the part of the Smith Company. It would require very strong evidence — stronger than this record contains — to convince us that that was the bargain. The testimony of the manager for the Smith Company is said to be corroborated by that of a witness who testified that the manager for the Smith Company told him of the agreement with plaintiff, immediately after the telephone conversation with plaintiff. The testimony of the witness, as to what the manager of the Smith Company told him, was objected to on the ground that it was a self-serving declaration on the part of the manager for the Smith Company. The objection was overruled on the ground that it had reference to the effect and not the admissibility of the evidence. The objection should have been sustained, for the statement was a self-serving declaration.
 

 The telegram which we have referred to was dated the 6th of December, 1922, and was sent in response to an urgent telegram from Palmer, demanding delivery of the cotton. Palmer’s telegram read:
 

 “Have been calling you past two days. Covered your cotton. Could not wait longer. Call me. Very important.”
 

 The manager for the Smith Company answered :
 

 “Will deliver cotton as per agreement. No other communication necessary.”
 

 It is not possible that that telegram meant that the Smith Company would deliver the cotton when and if the market price should drop 3 cents per pound. The meaning of the telegram was that the cotton would be delivered at the prices stipulated, that there was no misunderstanding between the parties, and that the Smith Company declined to be annoyed by any further telephone communications. The manager for the Smith Company admitted, in his testimony, that the telegram had reference not only to the undelivered 50 bales of cotton contracted for on the 20th of September, but also to the 100 bales referred to in the transaction of da'te the 13th of October. Our conclusion is that the contract of date the 13th of October, 1922, was proven.
 

 The measure of damages for breach of a promise of sale is the difference between the contract price and the market value on the last day on which the seller might have delivered in compliance with the contract, and if the" time of delivery has been extended the market price must be taken as of the date to which the time of delivery was postponed. 55 Cyc. 637 (B). The fact that there was a demand for delivery and promise "to deliver after the expiration of the time for delivery did not extend the time for delivery, and the buyer, because of the final failure of the seller to deliver, may recover the difference between the contract price and the market value at the time agreed upon for delivery. Norton v. Wales, 24 N. Y. Super. Ct. 561; Ala
 
 *795
 
 bama Chemical Co. v. Geiss, 143 Ala. 591, 39 So. 255.
 

 The judgment appealed from is amended by increasing the amount thereof to $2,899.37, with legal interest from judicial demand; that is, from the 5th of May, 1924. The defendant is to pay the costs of this suit.