$5,000, with legal interest thereon from judicial demand and for costs.

Both defendants excepted to the suit; the Ellis Variety Stores upon the ground that the petition did not disclose a cause of action against it, and the First National Bank of Lake Providence upon the ground that the petition did not disclose either a right or cause of action against it.

After the exceptions were filed, the petition was amended. Thereupon the exceptions were renewed, they were heard, and the trial judge sustained both exceptions and dismissed the plaintiffs' suit. The appeal is from that judgment.

██ After reading the record, we have reached the conclusion that whether the judgment appealed from should be affirmed or reversed hinges on the interpretation that should be given the provision of the contract for the forfeiture of the earnest money. The facts alleged in the petition and the contractual obligations assumed by the plaintiff and the Ellis Variety Stores towards each other lead us to the conclusion that any interpretation of the contract by and between the plaintiff and Ellis Variety Stores, which absolves the latter from the performance of its obligations under the contract and holds the plaintiff to a strict performance of its contractual obligations, which obligations were made impossible of performance, not by any fault of the plaintiff, but solely by the failure of the Ellis Variety Stores to perform, would be manifestly unjust and inequitable. We find that it would be necessary to so interpret the contract in this record in order to sustain the judgment appealed from. This is an exceptional case, and in the brief of counsel for plaintiff it is well said:

"We take it that the courts will not sacrifice justice and equity in order to enforce a literal interpretation of an agreement to for-

feit earnest money in a contract. In this case the earnest money was deposited by plaintiff as a guarantee that *when all the conditions* of the contract had been *fulfilled* and the contract was ready to be *consummated* it would go on with the trade and accept the transfer of the property and pay the price with the earnest money credited on it. * * * *The performance of all of the requirements of Act No. 270 of 1926* was a *condition precedent* to the obligation of the plaintiff to pay the price, *and since the requirements of said Act were not complied with*" (counsel might have said by the Ellis Variety Stores), "the obligation to pay the price never arose or came into existence."

We think the petition states a cause of action, and, as to the defendant bank, it states a right of action because the bank, as the depository of the earnest, is a necessary party to the suit.

For these reasons it is decreed that the judgment appealed from be and it is hereby avoided, that both exceptions be and they are overruled, and the case be and it is remanded to be proceeded with according to law. It is further decreed that the costs of this appeal be paid by appellees.

██

(123 So. 719)

No. 27608.

·LEXINGTON CANDY MFG. CO. v. PREJEAN.

July 8, 1929.

John B. Martin, of Donaldsonville, for appellant.

C. C. Weber and Chas. T. Wortham, both of Donaldsonville, for appellee.

LAND, J. Petitioner obtained against the curatrix of defendant, for the breach of a contract to deliver sugar, a judgment in the sum of $3,196.22, with legal interest from November 13, 1919, until paid. The curatrix appealed, and later defendant was made party defendant and appellant by the order of this court.

The facts of the case are as follows:

The defendant is a sugar planter and sugar manufacturer, engaged in business at the Halfway plantation and sugar factory in Assumption parish.

On August 23, 1919, defendant entered into an agreement to sell to petitioner 200 barrels of sugar, to be delivered out of the first sugar made at the opening of the grinding season of the year 1919, or shortly after the 1st day of November, 1919. The sugar was to be delivered to the railroad for shipment f. o. b. Halfway plantation, at the price of 40 cents per 100 pounds less than the selling price quoted by the American Sugar Refining Company on the day of the shipment of the sugar.

In compliance with his contract defendant shipped and delivered to petitioner 100 barrels, the first two lots of sugar made by him, and for which he was paid by petitioner the sum of $3,297.78.

At the date of delivery, the price of standard sugars in barrels was 9 cents per pound, and the contract price at which 100 barrels should have been delivered was $8.60 per 100 pounds.

Defendant, however, insisted that the highest price of the American Sugar Refining Company should be taken as the contract price, and, as a concession on the part of petitioner, defendant was paid this price, which was slightly more than the contract price.

When lots 3 and 4 were made at the factory, defendant asked petitioner as a favor to allow him to sell these lots in the open market so as to reap the benefit of the high prices then prevailing for Louisiana plantation sugar. Petitioner consented, under the promise made by defendant, to deliver the remaining 100 barrels, lots 5 and 6, out of the next strikes of sugar.

On November 13, 1919, as such strikes were being completed, a representative of petitioner made demand on defendant for the delivery of the remaining 100 barrels of sugar, but defendant refused to deliver same.

During the entire month of November, 1919, the prices of sugar were regulated by the United States government, and the selling price for the American Sugar Refining Company was fixed by the government during the whole of that month at 9 cents per pound for sugars in barrel. If defendant had delivered the last 100 barrels, he would have been entitled to be paid therefor the sum of $3,297.78, which was the price of the first 100 barrels of sugar, with the concession made to defendant.

During the grinding season of 1919, the United States government permitted planta-

tion sugars, the class of sugar defendant contracted to sell to petitioner, to be sold at the price of 17 cents per pound.

As petitioner needed the 100 barrels of sugar in its candy making business, and as no sugar was at that time available at 9 cents, petitioner could not obtain the amount of sugar required from the American Sugar Refining Company, and was compelled to purchase in open market and to pay for the 100 barrels of sugar prices ranging from 22 to 28 cents per pound, but, since petitioner could have replaced· the sugar on November 13, 1919, the day the contract was breached, at 17 cents per pound, petitioner claims the right to recover only on that basis.

The 100 barrels of sugar are therefore priced by petitioner at the cost of $6,494, or 17 cents a pound. The contract price for the sugar was $3,297.78. Petitioner is therefore entitled to recover against the defendant, Sylvere Prejean, the difference, or the sum of $3,196.22, with legal interest thereon from November 13, 1919, until paid.

It is ordered that the judgment appealed from be amended by substituting Sylvere Prejean as defendant, and that the judgment, as amended, be affirmed.