VIOSCA, Justice.
 

 Plaintiff claims damages for breach of contract in the sum of $2,200 which he alleges is the difference between the price agreed upon in a sales contract and the market price of the goods on the due date of delivery. The suit is based on an agreement under the terms of which defendant sold to plaintiff on June 10, 1955, 200 gross tons of No. 1 and No. 2 heavy melting steel
 
 *961
 
 at the price of $33 and $31 per gross ton respectively, which purchase was confirmed by plaintiff’s purchase contract No. 3940 which was mailed to but not signed by defendant. Plaintiff alleges that during the latter part of June, 1955 defendant by telephone conversation requested that the quantity be increased to 400 tons at the same price, to which plaintiff assented. Plaintiff further alleges that deliveries were made from time to time aggregating 200 tons and that defendant on or about November 4, 1955, refused to make any further deliveries as a result of which plaintiff suffered a loss of $2,200 since the price of heavy melting steel at that time had increased $11 per ton.
 

 Defendant denies that it ever accepted the original contract, denies that it ever agreed to an increase in quantity to 400 tons, admits that it refused to make any deliveries and avers in the alternative that the measure of damages should be the difference in price as of July, 1955, which was then $2 per ton.
 

 The district judge rendered judgment in favor of plaintiff in the sum of $400 with legal interest from November 4, 1955 and costs, and plaintiff has appealed, asking that the amount be increased to $2,200.
 

 While it is true that the written purchase contract was not signed by defendant, plaintiff has nevertheless established an oral agreement entered into on June 10, 1955 for the purchase of 200 tons of No. 1 and No. 2 heavy melting steel at $33 and $31 per ton, respectively, delivery to be made between June 10th and July 1st of 1955. This oral agreement was confirmed by the mailing by plaintiff to defendant of two copies of the written purchase contract. Although defendant’s general manager Lomm denies that he entered into such an agreement, it has nevertheless been established that defendant, under this agreement, delivered on June 24th, July 5th, July 6th, September 14th and September 27th, 1955 a total of 200 gross tons for which defendant was paid at the agreed prices.
 

 George Adams, Vice President of plaintiff testified that in the latter part of June, 1955, Lomm telephoned him and requested that the order be increased to 400 tons at the same price, to which he agreed and this was confirmed by a letter written to defendant under date of June 29, 1955. Adams testified that thereafter he had difficulty getting delivery because of an increase in the price of steel but Lomm nevertheless promised from time to time to make deliveries. One of the occasions when these promises were made was at a luncheon attended by Adams, Lomm and the latter’s son-in-law Pailet. Stanley Diefenthal, Executive Vice-President of the plaintiff, testified that he also had numerous discussions with Lomm about
 
 *963
 
 deliveries and that Lomm from time to time promised to make shipments alternately under the contract involved in this suit and other contracts at higher prices which had meanwhile been entered into between the parties. He testified that it was not until November 4, 1955, that Lomm finally told him that he would not make any further deliveries stating as his reason “Well, the sum of money has become so great, my word isn’t any good any more.” Plaintiff thereupon wrote defendant on November 17, 1955 placing defendant in default.
 

 Erwin Ingert, Secretary and Traffic Manager of plaintiff, also testified that he had made numerous demands for deliveries on Lomm and on one occasion wrote Lomm on August 4, 1955 calling attention to the fact that there were still 276 gross tons to be delivered under the contract. He testified that Lomm from time to time promised him that he would make the delivery.
 

 Lomm, the General Manager of defendant, denied that he ever accepted the 200 ton contract, denied that he agreed to increase the amount of the order an additional 200 tons, testified that Diefenthal agreed that there was no contract between them and denied that he made any deliveries at all under contract No. 3940. His testimony is very contradictory and evasive and it is obvious that the district judge did not believe him, nor do we. Defendant failed to produce Pailet as a witness.
 

 In this Court defendant’s counsel argues that there never was a contract between the parties because they contemplated that the oral agreement would be reduced to writing and since defendant never signed this contract, he could still withdraw. That rule has
 
 no
 
 application here. The contract was an oral one and the purchase order was sent in confirmation thereof. Furthermore, defendant performed the contract in accordance with the original terms by delivering 200 tons. The agreement to increase the amount of steel to 400 tons was likewise an oral agreement.
 

 Defendant further argues that parol evidence is not admissible to vary the terms of a written contract. The record shows that defendant did not object when plaintiff introduced parol evidence to establish the increase in the amount of steel sold. Furthermore, the contract in this case was an oral one and in any event a written contract may later be amended by oral agreement where the law does not require that the contract be in writing.
 

 Defendant further contends that the letters mailed by plaintiff to defendant were self serving declarations and should not be considered. Here again the record shows that no objection was made to the introduction of these documents. Furthermore, the truth of the statements made in these communications was established by witnesses who had knowledge of the facts.
 
 *965
 
 Where the truth of statements made in a written communication is established by witnesses having knowledge of the facts, the communication is not objectionable as being hearsay or a self serving declaration. Succession of Bell, 194 La. 274, 193 So. 645; Lado v. First National Life Insurance Company, 182 La. 726, 162 So. 579.
 

 In awarding judgment in the sum of $400 the district judge apparently allowed the defendant the difference in price as of July, 1955, which was the original agreed date of delivery. As previously pointed out the delivery date was extended by agreement from time to time and it was not until November 4, 1955 that the defendant defaulted on its contract by refusing further delivery. The measure of damages therefore should be the difference in price as of that date, or $11 per ton. Where the period within which the contract for the delivery of an object is to be executed is extended by consent of the parties, the time at which the final failure of execution takes place is the proper time at which to fix the market value for the purpose of an action in damages for nondelivery. Lexington Candy Manufacturing Co. v. Prejean, 168 La. 1078, 123 So. 719; Palmer v. Smith Co., Inc., 165 La. 788, 116 So. 186; C. F. Bonsor & Co., Inc. v. Simon Rice Milling Co., 151 La. 1094, 92 So. 711; Crescent City Manufacturing Co., Ltd. v. Slattery, 132 La. 917, 61 So. 870.
 

 For the reasons assigned the judgment of the district court is amended by increasing the amount to $2,200 and, as thus amended, is affirmed, defendant to pay all costs.