McBRIDE, Judge.
Plaintiff obtained a final judgment against Commercial Scrap Materials Corporation for $2,200, with interest and costs (see 239 La. 958, 120 So.2d 491), and under a writ of fieri facias issued thereon caused one Gus Pailet to be cited as garnishee to declare under oath whether he was indebted to or what property he had in his possession or control belonging to the judgment debtor. The garnishee filed his answers to the interrogatories categorically denying he was indebted to the judgment debtor or that he has any property belonging to it in his possession or under his control. Plaintiff, on the allegation that the garnishee’s answers were false and evasive, instituted a rule to traverse the same which, after a hearing of the evidence submitted thereon, was made absolute. Pailet’s answers to the interrogatories were set aside and judgment was rendered in favor of plaintiff and against Pailet for $2,200.00, etc. Pailet appeals.
The record reveals that on June 24, 1960, plaintiff herein filed a proceeding against the judgment debtor to examine it in matters pertaining to its estate and called for the production of all of its books and records which were examined on July 18, 1960. Acting on certain ■ circumstances brought to light by the examination of the judgment debtor’s books, the garnishment was served upon Pailet on July 28, 1960.
According to the books and the admissions of Pailet, who was President of the debtor corporation, on October 31, 1957, there was owing to the judgment debtor by its officers, one of whom was Pailet, the sum of $27,500; on October 31, 1958, the officers owed the corporation $21,629 and on October 31, 1959, the sum of $8,562 was shown to be owed to the corporation by Pailet personally. How this indebtedness of Pailet arose or over what period of time it occurred is not shown. Said item of $8,562 was cancelled by a journal entry of June 30, 1960, crediting Pailet with $4,200 for salary for the fiscal year beginning November 1, 1959, and ending October 31, 1960, and by charging $4,362 (the remaining debit against Pailet) to the surplus account of the corporation. It will be noted that said bookkeeping entry allowed Pailet a credit for salary for the months of July, August, September and October 1960, which had not been earned and had not accrued.
Wiley M. Wilkinson, Jr., a Certified Public Accountant and Treasurer of the plaintiff corporation, testified as to the indebtedness owed by the officers of the judgment debtor as shown not only on the books of the corporation but as had been reported on the corporation’s Federal income tax returns as amounts due by tire officers. Wilkinson also testified that the initial entry for the fiscal year beginning November 1, 1959, showed that Gus Pailet owed the $8,562 which was cancelled as aforesaid. No substantiating vouchers in support of the credits allowed Pailet were made available for his inspection. Wilkinson further stated that he was told by Irving B. Cohen, a Certified Public Accountant who had been employed by the judgment debtor in 1959, that Nathan Lomm, its General Manager, and Pailet, its President, had directed the making of the entries cancelling Pailet’s indebtedness.
It is not disputed that Cohen was directed to make such entries and that there were no documents to support such charge off. Cohen testified that Lomm and Pailet told *427 him Pailet was entitled to a salary of $4,200 from November 1, 1959, through October 31, 1960, and that the amount shown to be owing by Pailet to the corporation should be credited with this salary item, and further that the balance of the indebtedness should be written off and charged to the corporation’s surplus account because it was offset by salary which Pailet had earned but had never collected for two prior years. Cohen further stated that he prepared the corporation’s Federal income tax return for the year 1959 on which it was shown the salary later credited on the books to Pailet’s account, and that the only thing he did on June 30, 1960, was to charge off the indebtedness against Pailet pursuant to the instructions he had received. He further testified that the financial statement of the business he prepared for the fiscal year ending October 31, 1959, showed $8,400 of salaries to officers, $4,200 to Lomm and $4,200 to Pailet.
Pailet admits in his testimony that he received $8,562 from the corporation which he said was the aggregate of advances to him to pay his personal debts, doctors’ bills for his wife, insurance premiums, and interest on a loan that he had with a local bank. He stated the corporation was losing money and that he and the general manager did not receive their salaries but would spasmodically withdraw money for living expenses. Pailet’s statement that he was the President of the corporation and did the buying and worked in its office is not disputed. There is no evidence countervailing Pailet’s assertion that he was salaried. But there is confusion as to the amount of Pailet’s salary. The corporation seems to have steadily lost money and the testimony indicates that for the past three years the President’s annual salary was $4,200. The credit entry under attack makes that certain as does the W-2 forms (for Social Security coverage) submitted by the corporation to the Federal Government as well as income tax returns. These returns were made on the basis of Pailet’s salary being $4,200.
Plaintiff contends that Pailet did receive his salary for the period in question. In support of the contention they rely on the Federal income tax returns of the corporation which show the item of officers’ salaries of $10,200 for the year ending October 31, 1958, and $8,400 for the year ending October 31, 1959. The fact that the income tax returns set forth the aggregate salaries of the officers does not demonstrate that Pailet received payment for his salary, for it is a matter of common knowledge that Federal income tax returns may be made either on a cash basis or on an accrual basis at the option of the taxpayer, and for all we know the tax returns of the corporation showing the salaries might have been made on the latter basis. The type of returns the corporation filed was never explained by either of the two expert accountants, nor are the returns included in the evidence.
The trial court evidently did not believe the testimony of Pailet and his father-in-law, Lomm (the General Manager of the corporation), and set aside Pailet’s answers to the interrogatories of garnishment and rendered judgment against him for a like amount of the judgment plaintiff holds against defendant corporation. It is argued by plaintiff that Pailet and Lomm are not worthy of belief. We have read their testimony and it appears both of these persons made several statements which were either evasive or difficult to believe, such as they do not know who the stockholders of the corporation are, but this would be no justification for saying that plaintiff has succeeded in proving that Pailet was entitled to no credit because there was no unpaid salary and that the bookkeeping transactions were shams and in fraud of plaintiff’s rights. The verity of a garnishee’s answers to the interrogatories cannot be impeached by a mere showing that he is unworthy of belief. To contradict his answers the facts stated in them must be disproved in the manner provided by law.
*428 From the standpoint of laymen in the field of bookkeeping we cannot see how it would make a particle of difference whether the money withdrawn from the corporate treasury by Pailet actually represented advances to pay for personal expenses as he claims or whether the funds were advanced against his salary. In either of the two events Pailet would be debited for any amounts withdrawn but then, too, there should be offset credits thereagainst for the salary due him. It was not shown that Pailet withdrew any more from the corporation during the period in question than the debit entry shows and we are constrained to accept the debit as being the correct amount of withdrawals. There would be nothing wrong in crediting Pailet for earned but uncollected salary against such debit if there was any. Cohen says nothing was irregular about such entry of the credits and Wilkinson did not say that they were not regular.
But, according to the offsetting entry itself, it seems Pailet was erroneously given credit for more salary than he had earned or had accrued as of the date June 30, 1960. The credit of $4,200 represented Pallet’s salary for the entire fiscal year beginning November 1, 1959, and ending October 31, 1960, when as a matter of fact on June 30, 1960, Pailet was due salary only for eight months of said fiscal year. Salary (at the rate of $350) had not been earned for the months of July, August, September and October, 1960.
The garnishment was served July 28, 1960, and what was owed by Pailet to the judgment debtor on that date is the question. Salary for three days of July and the three months of August, September and October, 1960, had not then been earned, and, of course, could not serve as an offset against Pallet’s indebtedness. The credit of $4,200 for the full year’s salary should be reduced by $1,083.75, which was the portion thereof which was not due Pailet when the garnishment process became effective. Thus, the latter amount is what Pailet owed the judgment debtor.
Counsel for the garnishee points to Art. 264 of the Code of Practice (then prevailing), which reads as follows:
“Although the answer of the garnishee to the question put to him, be made under oath, the plaintiff may, nevertheless, show the same to be false, either by positive zvritten proof, or by the oath of two witnesses worthy of belief, in the same manner as when interrogatories on facts and articles have been put to a party in a suit; and if it be proved by such evidence that the garnishee has in his hands property or effects belonging to the party against whose property the attachment has been granted, or that he be indebted to him in any amount, such property and effects, as well as such sum as may be due by him, shall be subject to satisfy such judgment as may be rendered against the defendant.” (Italics ours.)
He follows with the argument that the plaintiff has not borne the burden of proof imposed by the quoted article of showing by positive written proof, or by the oath of two witnesses worthy of belief, that the answers to the interrogatories of garnishment are false.
We think the falsity of the answers was shown by plaintiff by such evidence as would conform to the requisites of the article. Cohen, appearing on behalf of Pailet, testified as to the recitals of the judgment debtor’s books, and while the books themselves are not in the record, not having been introduced in evidence, it can be taken as a fact from evidence introduced by the garnishee that the books reflect what Cohen testified they contained, and that is that Pailet was given credit for $1,083.75, to which he was not entitled, and that he actually owed the debtor corporation that amount when the garnishment was served upon him. Therefore, the court had before. it evidence showing the existence of positive written proof that Pailet made false answers to the interrogatories.
*429 Furthermore, from the testimony under oath of two witnesses worthy of belief (Wilkinson and Cohen) the indebtedness of Pailet to the defendant corporation clearly appears.
The judgment appealed from is amended so as to reduce the amount thereof to $1,083.75 from $2,200, and as thus amended, and in all other respects, it is affirmed; plaintiff-appellee is to pay the costs of this appeal.
Amended and affirmed.