CECIL C. CUTRER, Judge pro tem.
The plaintiff, Edward Chassaniol, Jr., Roofing & Siding, Inc., seeks judgment against defendant, William A. Ramsey, in the sum of $921.25 representing the contract price of $914.00 for the installation of a roof on defendant’s premises and $7.25 for the cost of filing a material and labor lien against the property.
The defendant resists liability on the ground that the work was not performed in compliance with the contract. The defendant, by reconvention seeks $1,150.00, which he alleges is the sum necessary to properly perform the roofing work in question.
The trial court rendered judgment for plaintiff in the sum of $921.25, with legal interest thereon from date of judicial demand until paid, less a credit of $75.00, the sum required to make adjustments necessary to properly complete the work. From this judgment, appellant (defendant) brings this appeal.
The contract entered into by the parties provides as follows:
“Mr. D. W. Ramsey
“1030 N. Rendon St.
“New Orleans, La.
August 18, 1959
“Re: 3128 Ursuline Ave.
“Dear Sir:
“We propose to furnish labor and material to remove all tiles from entire main roof at the above address, remove existing felt and galvanized iron valley. Then over sheathing, we will apply one layer of 30 lb. felt tacked down securely with nails and tin caps. After this is done, we will furnish and install one new 26 gauge galvanized iron valley, then over felt, we will relay all good tiles salvaged by us and furnish necessary tiles to complete job. All tiles to be nailed with galvanized *620 zinc coated rust proof nails. All for the sum of
“($914.00)
“Debris will be removed by us and premises left clean.
“Trusting you will favor us with your acceptance of the above contract, we remain,
“Yours very truly,
“Edw. Chassaniol, Jr.
“Accepted Roofing & Siding, Inc.
“s/W. A. Ramsey 1959
“By 3/28/59 s/Edw. Chassaniol, Jr. “Addendum: All tiles to be nailed with two nails and no exposed nails, all felt to be removed to wood sheathing. All ridge tiles to be set in cement and sand.
“s/Edw. Chassaniol, Jr.”
The defendant contends that the evidence, adduced below, conclusively preponderates a lack of substantial compliance with the contract by the plaintiff. The defendant contends that plaintiff failed to comply with its contract in the following respects: Failing to secure each tile with two galvanized nails and leaving nails exposed below sheathing; failing to remove old roofing felt; failing to replace broken or otherwise defective tiles; the method used to remove and install the tiles caused damage to the new felt; and tiles were not laid in accordance with the method customarily followed in the performance of this type of work.
After plaintiff finished the work, defendant complained to plaintiff about defective workmanship, and particularly about exposed nails and crooked tile. Plaintiff, along with an employee, went to defendant’s premises for the purpose of rectifying the complaints. Upon arrival, defendant refused permission for plaintiff or his employee to do any further work on the roof. Plaintiff testified that he proposed to cut the nails flush with the sheathing thereby alleviating any protruding portion thereof. This procedure was common practice or procedure in the roofing business according to a number of the witnesses. According to the testimony, the longer nails were used in this sheathing since its condition was such that shorter nails would not hold the tile as well as the longer.
The defendant also contends that two nails were not driven to hold each tile. The evidence preponderates that the employees placed two nails in each tile with the exception of those instances where metal or a crack in the sheathing existed below the hole in the tile. In those exceptional instances only one nail was used for obvious reasons.
We turn next to the consideration of whether the plaintiff failed to comply with the contract by not removing the old felt before laying the new felt. The written contract explicitly provides that the old felt was to be removed. The plaintiff admits that the old felt was not removed, but relies on the testimony of Claude Ratleff, plaintiff’s foreman of this job, who testified as follows:
“Q Did Mr. Ramsey tell you anything about removing the felt, Mr. Rat-leff?
“A The first day I worked on the job Mr. Ramsey spoke to me about it.
“Q What did he say to you ?
“A He told me according to the contract, that the felt should have been taken off. I told Mr. Ramsey that I didn’t know anthing about that, so he said he would have to see about it. He in turn brought me downstairs inside his apartment where he was living and showed me the contract stating that the old felt should have been taken off. I answered Mr. Ramsey that I would have to speak to Mr. Chassaniol about it. I left and went home that afternoon. The next morning when I reported on the job, Mr. Ramsey met me and told me that I wouldn’t have to take the old felt off.
“Q Mr. Ramsey told you that himself?
*621 “A Yes, sir, he did.”
Upon questioning by the Court, this witness further testified as follows:
“THE COURT:
“Q Let me be sure I understand this. You say that you put new felt over the old felt, is that right?
“A Yes, sir, I did.
“Q Were there any tiles over the new felt when Mr. Ramsey called that to your attention?
“A When he called what to my attention ?
“Q That you should not have applied the new felt over the old felt.
“A Yes, sir, there were a few tiles down when he called that to my attention.
“Q The whole roof wasn’t tiled over the new felt when he talked to you, was it?
“A No, sir.
“Q Then it wasn’t a fact accomplished. The whole job wasn’t completed ?
“A Oh, no, sir.
“Q And the tile that had been put down could have been taken off and the new felt taken off, and the old felt removed and new felt laid, is that right?
“A Yes, sir.
“Q Without going to too much trouble or doing too much damage to the work that you had done, couldn’t it?
“A Yes, sir, Your Honor.
“Q And you tell me that Mr. Ramsey told you the next day that it wouldn’t be necessary to take off the old felt?
“A Yes, Your Honor. I explained that.”
Defendant vehemently denies that he consented to any such deviation from the contract provisions. The trial court must have concluded that the defendant did verbally agree to amend the contract so as to allow the old felt to be left on. We agree that such a conclusion was not in error, especially in view of the fact that defendant testified (Tr. 138) that he talked with several roofing men about the advisability of leaving the old felt on in such cases. A written contract may be amended by oral agreement where the law does not require the original contract to be in writing. Southern Scrap Material Company, Ltd. v. Commercial Scrap Materials Corporation, 239 La. 958, 120 So.2d 491. Furthermore, upon trial of the case, no objection was offered to Ratleff’s testimony concerning the oral amendment to the written contract.
As to the overall workmanship, the plaintiff produced two experienced roofers who inspected the roof within a year of the completion of the work. ' These two witnesses reported that the work was executed according to the usual methods and practices followed in roofing work of this type. Defendant’s witness, Fred A. Evans, a City Flousing Inspector, made an inspection of the roof and was critical of the workmanship employed by plaintiff. All these inspections were made without actually going upon the roof, but were viewed from the surrounding area. It is to be noted that the reason they did not go upon the roof was because defendant refused to allow them to do so. Mr. Evans used binoculars in making his inspection, but we do not believe that his use of binoculars for inspection would make his inspection and its results so intrinsically superior to the inspections of the plaintiff’s witnesses such as to constitute manifest error on the part of the trial judge in accepting the plaintiff’s two favorable inspections over that of defendant’s unfavorable inspection. This is especially true in view of the fact that one of the inspections which was favorable *622 to the plaintiff was initially made at the request of the defendant.
In the light of the above determinations, we believe the principles applicable to the facts of this case were succinctly stated by our Supreme Court in the recent case of Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880, in which the court adopted with approval the following passage extracted from the appeals court decision in that case, to-wit:
“With reference to the performance vel non of building contracts, where the contractor has defaulted, either in not completing the work or having performed defective work, but where there has been substantial performance, the contractor may sue for the full contract price. The remedy of the owner then is to allege and prove the nature and extent of the unfinished or defective work and the cost of completion and correction, the same to be deducted from the balance due under the contract. The burden is not upon the contractor to prove the value of the actual work done on a quantum meruit basis.”
Our appreciation of the record convinces us that there was no manifest error committed by the trial judge in deciding that the plaintiff had complied with and substantially performed the roofing contract upon which his claim for $914.00 is based. By the same token we feel that the $75.00 credit allowed defendant on his reconventional demand cannot be justifiably disturbed. We further find that the trial judge was correct in allowing plaintiff to recover an additional $7.25 representing the cost to plaintiff of recording the lien and privilege recognized in the lower court’s judgment. LSA-R.S. 9:4801, which establishes and grants this particular lien and privilege to laborers and material men, expressly provides that the cost of recording such a lien is recoverable. The case of George Kellett & Sons, Inc. v. Schwartz Industries, Inc., (La.Orl.App.), 107 So.2d 815, relied on by defendant, is inapposite since that case only declared that the notarial fee for preparing the lien affidavit and taking the oath of the affiant was nonrecoverable. That case expressly recognizes that the charge made by the Recorder of Mortgages for the actual recording of the notarized lien affidavit is collectable under LSA-R.S. 9:4801.
For the foregoing reasons, the judgment of the district court is affirmed, at appellant’s cost.
Judgment affirmed.