181 So.2d 289 (1965)
WWOM, INC.
v.
Mrs. Samuel J. GRAPES, d/b/a Nu-Deal Optical Company.
No. 1947.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1965.
Rehearing Denied January 10, 1966.
*290 David H. Seelig, Seelig & Levy, New Orleans, for defendants-appellants.
Edward F. Wegmann, Fred P. Westenberger, New Orleans, for plaintiff-appellee.
Before YARRUT, SAMUEL and CHASEZ, JJ.
CHASEZ, Judge.
Plaintiff, WWOM, Inc., operator of a radio station in New Orleans, filed suit to collect $6,375.00, allegedly due for radio advertising time. Numerous exceptions were filed and in due course appealed to this court. The decision reported in 158 So.2d 861, disposed of same and remanded the case for further proceedings. After a trial on the merits, judgment was rendered for plaintiff, and defendants took this appeal.
It was alleged that Samuel J. Grapes, doing business as Nu-Deal Optical Company, entered into a contract for radio advertising spots to be run during the year December 27, 1961, to December 26, 1962. The contract called for 750 thirty second spots at $3.50 each, and 750 sixty second spots at $5.00 each.
On July 10, 1962, Mr. Grapes died and the defendants herein, Mrs. Samuel J. Grapes, individually, doing business as Nu-Deal Optical Company, and as natural tutrix of the minors Marcus Jacques Grapes, Herman Karl Grapes, Louis David Grapes and Charlaine Sharon Grapes, have accepted his succession. There is no dispute that the obligation in this case is heritable and that the named defendants are the proper parties to be sued.
By letter dated August 2, 1962, an attorney representing the succession sought to cancel all advertising under contracts made by decedent with radio stations, including the contract sued on herein.
Other radio stations in the community complied with this request of defendants' counsel, but plaintiff did not choose to do so.
On this appeal defendants contend first, that the document dated December 26, 1961, purporting to be the contract in question is inadmissible in evidence under LSA-R.S. 13:3720; second, that said contract had never been executed by Mr. Grapes; and last, that if such a contract had been executed, it has never been performed.
We do not find the cited section of the revised statutes relevant and will not quote it at length. It merely sets forth the requirements for acknowledging a writing under private signature before a notary public in order to make it self-proving. It does not require that any and every agreement under private signature be clothed with these formalities in order to be valid. There is no merit to the contention of defendants that LSA-R.S. 13:3720 and 13:3721 prohibits judgment in favor of plaintiff.
Defendants' second contention is equally without merit. The record reveals that broadcasting under this contract had been done prior to Mr. Grapes' death and all parties to this suit were aware of this fact. It further reveals that following the death of Mr. Grapes extensive negotiation concerning this advertising program was carried on by attorneys representing defendants. The letter of August 2, 1962, mentioned above, forms a part of these *291 negotiations and admits the existence and execution of the contract now denied. Furthermore, the widow, Mrs. Grapes, when shown the document and asked under cross-examination if the signature was her husband's apparently responded in the affirmative. In any event, she unequivocally stated that the signature looked like that of her husband. Mr. William T. Romaine, plaintiff's salesman who sold and serviced Mr. Grapes' account, testified that he was personally present when Mr. Grapes signed the document. Mr. David Wagenvoord, plaintiff's general manager, who signed the contract for plaintiff, testified that he was familiar with the signature of the deceased, having seen it on other contracts and on other occasions, and that he recognized the disputed signature as being that of decedent.
Our Civil Code, in Articles 2244 and 2245, are controlling in this case.
"Article 2244. The person against whom an act under private signature is produced, is obliged formally to avow or disavow his signature.
"The heirs or assigns may simply declare that they know not the handwriting or the signature of the person they represent."
"Article 2245. If the party disavow the signature, or the heirs or other representatives declare that they do not know it, it must be proved by witnesses or comparison, as in other cases."
We believe the evidence referred to above shows that the contract was in fact executed.
Defendants' final contention, that the contract was never performed by plaintiff, is based on the fact that sixty second spots have never been broadcast. Failure to run sixty second spots is claimed to be a "material breach." Cited as authority for this position is Article 1945 of the Civil Code. While it is true that agreements have the effect of law upon the parties thereto, that same article recognizes that the parties can modify their contracts. To the effect that written contracts may later be amended by oral agreement where the law does not require the original contract to be in writing, see Salley v. Louviere, 183 La. 92, 162 So. 811; Southern Scrap Mat. Co. v. Commercial Scrap Mat. Corp., 239 La. 958, 120 So.2d 491; Edward Chassaniol, Jr., Roofing & Sid., Inc. v. Ramsey, La. App., 144 So.2d 618. Certainly the contract itself contemplates further agreement beyond the terms of the writing itself. Otherwise it would be impossible to determine the number of spots to be run on each day, on which days, at what times of day, and the copy to be used. And it does not appear that there was ever any disagreement between the parties concerning these matters.
We believe that the parties did so modify the agreement in this case. A letter dated May 10, 1962, from Mr. William T. Romaine to Mr. Grapes confirms an oral understanding reached the previous day, which in substance eliminated all sixty second spots, increased the number of thirty second spots and extended the term during which they were to be run some four months. Defendants seek to impeach Mr. Romaine's evidence on the grounds that Mr. Grapes entered the hospital on May 5, 1962, and was in isolation until his death on July 10, 1962. We note that the testimony of Mrs. Grapes referred to for this proposition states only an approximate date and is a self-serving declaration. The exact date could easily have been proved in the lower court and was not. Mr. Romaine, as plaintiff's sales representative, regularly serviced Mr. Grapes' account and we feel it is unlikely that he would have written such a letter had the conversation not taken place. We are inclined to think that this letter was an integral part of the full agreement between the parties.
In any event the negotiations following Mr. Grapes' death ultimately resulted in a letter, introduced in evidence, dated October 3, 1962, and written by plaintiff's counsel *292 to defendants' counsel, confirming an agreement which in substance is identical to that contained in the May 10, 1962, letter referred to above. This letter further stated that if no word is received it will be assumed that the confirmation is correct. Defendants' counsel stipulates that he received it, and it also appears that Mrs. Grapes received a copy. Advertising was continued in accordance with these two letters.
LSA-C.C. art. 3000 says:
"Powers granted to persons, who exercise a profession, or fulfill certain functions, or doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise."
It is clear that defendants' counsel was actively engaged in negotiations concerning this matter on behalf of the defendants and under the article quoted the defendants were bound by his acts.
The judgment below was for $5,659.50 instead of $6,375.00, the full amount of the contract. The record indicates that some payment was made, though not how much, nor when. Plaintiff established by the testimony of Mrs. Jo Ann Mueller, its bookkeeper, and by the introduction of its account records, the indebtedness of the defendants to the plaintiff in the full sum of $5,659.50, and we find no error in this award.
The defendants herein filed a reconventional demand praying for a judgment against the plaintiff for the sum of $25,000.00, with legal interest from judicial demand until paid and all costs. The basis of this reconventional demand is alleged to be the erroneous demand for security in the Succession of Samuel J. Grapes, $15,000.00, and for the harassment of plaintiffs in reconvention by the filing of the suit under consideration herein, $10,000.00. The District Judge failed to dispose of the reconventional demand in the judgments rendered herein but the evidence is clear to us that the complaints set forth in the allegations of plaintiff in reconvention are without merit, are not proved in the evidence and said reconventional demand should be dismissed.
For the foregoing reasons, the judgment appealed from is amended so as to dismiss the reconventional demands of the plaintiffs in reconvention against WWOM, Inc., the defendant in reconvention. As thus amended, and in every other respect, the judgment appealed from is affirmed; costs of this appeal to be paid by the defendants-appellants.
Affirmed.