BLANCHE, Judge.
Plaintiff-appellant, J. B. Bailey, appeals the trial court judgment which denied his claim for rent, damages and attorney’s fees allegedly due under a lease of certain carnival rides by defendant-appellee, C. W. Lowery.
On February 12, 1974, plaintiff and defendant entered into a seven-year written “LEASE CONTRACT WITH OPTION TO PURCHASE” plaintiff’s carnival rides. The lease price was the sum of $10,000 per year, payable in ten equal monthly installments, in advance, com *483 mencing February 1, 1974, and due on the first day of each month for ten consecutive months throughout each year.
In further consideration of the said lease, defendant was granted the option to purchase the rides for the sum of $70,000. To exercise the option, defendant was to notify plaintiff of his intention by certified letter, and in such case the act of sale was to be passed within ten days of the receipt of said letter by plaintiff. Upon exercise of the option, all of the prior rental payments were to be applied to the purchase price, with the balance to be paid in cash at the passing of the sale.
Under the agreement, the lessee was obligated to maintain the rides in good, safe condition. Paragraph 8 provided for written notice to the defendant if he violated any of the lease provisions. Ten days after such notice, if defendant remained in violation, plaintiff could, at his option, demand the entire remaining rent or immediately cancel the lease without putting the lessee in default.
Immediately after confection of the lease, defendant fell two months behind in rental payments, and on May 22, 1974, plaintiff demanded payment by registered letter. The defendant failed to pay and on June 7, 1974, plaintiff brought suit requesting sequestration of the property, payment of the entire rental as per paragraph 8, and reasonable attorney’s fees as authorized in the agreement. The rides were seized on that date.
However, immediately following institution of suit, a meeting between plaintiff and defendant was arranged at the office of Judge Robert Lottinger,[1] who at that time represented plaintiff. The primary purpose of that meeting was to reach a compromise regarding the overdue rent, presumably to avoid a trial of the matter. Also present at the meeting were the plaintiff’s wife; defendant’s wife; Judge Lot-tinger; and Douglas Authement, one of defendant’s attorneys.
Although defendant acknowledged that the primary purpose of the meeting was to settle the dispute concerning the overdue rent, he contends that he also orally exercised his option to purchase the rides.
Plaintiff disputes that the defendant notified him of his intention to exercise the option. He claims that the meeting resulted in the defendant’s agreeing to pay $1,250 as partial settlement of the overdue rent.
Nevertheless, the sequestered property was released and the defendant again took possession thereof.
At the meeting above referred to, it is defendant’s contention that plaintiff was to produce proof of his ownership of the rides by tendering to defendant the titles thereto; and when the plaintiff failed to produce these titles after approximately three weeks, defendant abandoned the rides in Houma, Louisiana. He did, however, return them to plaintiff’s home in the early part of August, 1974.
Upon receipt of the rides, plaintiff inspected them and allegedly found them to be in poor repair. Consequently, he amended his original petition, seeking additional damages of $19,895. He also sought $33,000 allegedly representing a reduction in the fair market value of the rides due to defendant’s failure to properly maintain them.
In that posture the suit went to trial. The defendant contended that he owed nothing to the plaintiff since he breached the contract by failing to produce the titles to the rides following defendant’s exercise of the option. Defendant reconvened against plaintiff, seeking $85,000 damages for loss of business profits and other general damages.
*484 Plaintiff, on the other hand, denied that the option was exercised since the defendant failed to follow the prescribed method for exercising the option, that is, notification of the plaintiff by certified letter.
The trial judge found as a fact that the defendant orally notified the plaintiff of his desire to exercise the option at the aforementioned meeting. He further held that even though said notice of intention was not transmitted in accordance with the terms of the agreement, plaintiff, by his actions, waived that requirement and thereby acquiesced in the method chosen by the defendant. The plaintiff was, therefore, precluded from recovery since it was he, and not defendant, who was in violation of the agreement. Defendant’s re-conventional demand was denied, and no appeal was taken therefrom.
On appeal, plaintiff contests the trial judge’s factual finding that defendant communicated to plaintiff his desire to exercise the option. He also argues that as a matter of law the defendant was precluded from exercising the option in any manner other than that specified in the agreement.
After a careful review of the record, we cannot say that the trial judge was manifestly erroneous in concluding that the defendant exercised the option.
Our review of the evidence disclosed that the same is in hopeless conflict, with plaintiff and defendant presenting diametrically opposed versions of the meeting.
Judge Lottinger’s testimony indicates that although no option was exercised the titles to the property were definitely discussed and that plaintiff was to gather the titles together so that the sale could be perfected on another date.
Douglas Authement testified that the option was definitely exercised. In essence, he stated that defendant had reason to believe the subject rides had been previously sold to another person and, therefore, one of defendant’s objectives at the meeting was to exercise the option and put an end to the uncertainty surrounding the defendant’s use of the rides. It was in this context that defendant demanded to examine the titles in order to verify plaintiff’s ownership. The titles were also required for financing.
It was Authement’s contention, in view of the foregoing, that plaintiff left the meeting to go and gather the titles so that the sale could be passed. Plaintiff, of course, never produced the titles and, therefore, the sale never took place.
Carolyn Lowery, wife of defendant, testified that she and her husband informed the plaintiff at the meeting that they desired to exercise the option and that plaintiff agreed to produce the titles. She stated that the sale was not perfected solely due to the failure of plaintiff to produce the titles.
Defendant’s father-in-law, B. E. Miller, also a carnival operator, testified that he had made arrangements for defendant to obtain financing for the sale and also intimated that he would have helped financially if required.
Although the plaintiff’s wife was present at the meeting, he failed to call her to testify in his behalf.
After hearing the testimony of these witnesses, the trial judge concluded that a discussion of the presentation of the titles would not have taken place unless there was the desire and notice by the defendant to exercise his option to purchase.
The criteria by which to judge the factual determinations of the trial court are set forth in Canter v. Koehring Company, 283 So.2d 716 (La.1973), as follows:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding *485 in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” (283 So.2d at 724)
The evidence presented at this trial furnishes a reasonable basis for the trial court’s factual determination. The trial judge’s evaluation of the conflicting testimony presented herein should not be disturbed since he had the opportunity to evaluate the credibility of each witness and draw reasonable inferences of fact based thereon. To disturb his conclusion based merely upon a reading of the cold record would do violence to the proper allocation of trial and appellate functions.
Since no immovable property was involved herein, LSA-C.C. Art. 2462 did not require that the option to purchase these rides be in writing. Therefore, by mutual consent, the parties could orally vary the requirement of the written agreement regarding the manner of exercise of the option. Southern Scrap Material Company, Limited v. Commercial Scrap Material Corporation, 239 La. 958, 120 So.2d 491 (1960); Christ v. Christ, 251 So.2d 197 (La.App. 3rd Cir. 1971).
However, plaintiff contends that the oral agreement was invalid since it contained no new meeting of the minds of the parties with regard to the essential elements of their contract, that is, a new price, time, et cetera. This argument is without merit, because the evidence establishes that the only contractual requirement that the parties intended to change was the method of exercise of the option. Therefore, all of the other elements of the contract remained in effect and the parties were governed thereby.
Plaintiff argues that the defendant could not exercise the option at Judge Lot-tinger’s office since prior to that time, on May 22, defendant had been put in default and as a result he no longer had any rights under the contract. However, plaintiff’s argument overlooks the fact that one of the purposes of the meeting at Judge Lot-tinger’s office was to settle the dispute regarding the rent arrearage. By plaintiff’s own admission, that dispute was settled and the defendant ultimately delivered to him a check for $1,250 toward satisfaction of that claim.
The plaintiff’s release of the sequestered property and acceptance of the rent settlement had the effect of releasing the defendant from default. Therefore, since the defendant was no longer in default under the agreement, he was entitled to exercise his option.
In conclusion, we find, as did the trial judge, that the plaintiff’s suit should be dismissed. By his failure to present the required titles, the plaintiff breached the contract and thereby prevented the sale of the rides. Since it was plaintiff, and not defendant, who breached this contract, plaintiff has no legal right to enforce same against the defendant.
For the above and foregoing reasons, the judgment of the trial court is affirmed, at appellant’s costs.
AFFIRMED.

. Judge Robert Lottinger was a City Judge of the City of Houma, State of Louisiana, and authorized to practice law.