295 So.2d 550 (1974)
Jack C. SIMMONS, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants-Appellants.
No. 4496.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1974.
Rehearings Denied June 26, 1974.
Writs Refused September 13, 1974.
*552 Brame, Bergstedt & Brame, by John E. Bergstedt, Lake Charles, for defendant-appellant, Mississippi Valley.
Holt & Woodley, by Edmund E. Woodley, Lake Charles, for defendant-appellant, Travelers Ins. Co.
Francis E. Mire, Lake Charles, for plaintiff-appellee.
Plauche, Smith & Hebert, Allen L. Smith, Jr. Lake Charles, for defendant-appellee.
Larry A. Roach, Lake Charles, for defendant-appellee.
Irwin Hancock, in pro. per.
Before FRUGÉ, CULPEPPER AND DOMENGEAUX, JJ.
FRUGÉ, Judge.
This is an action seeking damages for personal injuries. Plaintiff, Jack C. Simmons, sustained injuries while employed as an ironworker by Nat Harrison Associates, Inc., during construction of a calcine coke storage facility under a general contract with the Lake Charles Harbor and Terminal District. Multiple defendants were joined, numerous pleadings filed, and preliminary rulings entered in advance of trial on the merits.
A jury trial was held and defendants, Randolph M. Foster, his insurer, Travelers Insurance Company, and Mississippi Valley Structural Steel Company, were found negligent and liable, in solido, to plaintiff in the amount of $132,500. Appeals were perfected by these defendants. After a careful review of the record, we amend the judgment of the trial court and affirm.
Suit was initially brought against several parties, some of whom were alleged to occupy executive officer status in Nat Harrison Associates, Inc. (subsequently referred to as "Associates"). For purposes of this appeal, the issue of executive office liability is raised only in regard to Irvin B. Hancock and Randolph M. Foster. The jury found only the latter liable for plaintiff's injuries, as an executive officer of Associates.
Defendants-appellants, Randolph M. Foster and his insurer, Travelers Insurance Company (hereinafter referred to as "Travelers"), asserted, on appeal, that the trial court erred in overruling the exceptions of lack of jurisdiction, filed on behalf of Irvin B. Hancock and Randolph M. Foster, and in refusing to grant the exception of prescription filed by Randolph M. Foster.
In regard to the jurisdictional issue, we conclude the following. Although Messrs. Foster and Hancock were present in this state in a representative capacity on behalf of Associates, the long-arm statute, LSA-R.S. 13:3201, conferred jurisdiction over the person of both of these parties, and subjected them to the authority of the trial court. Section (c) of this statute provides personal jurisdiction over a non-resident as to a cause of action arising from the non-resident's ".... causing injury or damage by an offense or quasi offense committed through an act or omission in this state;."
In regard to Section (c), the following was said in the case of Jones v. Davis, 233 So.2d 310, 319 (La.App. 2nd Cir., 1970), writ refused 256 La. 80, 235 So.2d 101:
"Under the rule announced in the McGee case [McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223], it seems clear that the commission of a tort through an act or omission in the state would be a sufficient minimum contact to provide a basis for personal jurisdiction over a non-resident tort-feasor. Although this question has not, to our knowledge, been determined *553 by the United States Supreme Court, it has been adjudicated by other courts." (Citations omitted.)
It was also stated:
".... the provisions of the Louisiana statute granting the courts jurisdiction over a non-resident on a cause of action based on the commission of an offense, or quasi offense, through an act or omission in Louisiana is a valid exercise of power and does not violate the requirements of due process."
See also Carey v. Daunis, 274 So.2d 447, 448 (La.App. 4th Cir., 1973), wherein the Jones case, supra, was cited with approval.
In regard to the issue of prescription, the following facts are relevant. Suit was filed March 31, 1971, and Travelers was made defendant as general liability insurer of the alleged executive officers of Associates. On June 5, 1972, Mr. Foster was added as an additional defendant by an amending and supplemental petition. Since approximately one and one-half years had passed subsequent to the accident, Mr. Foster raised the exception of prescription as a bar to plaintiff's cause of action against him personally.
We believe, as did the trial court, that this exception is not well founded in law. As determined in the recent case of Pearson v. Hartford Accident & Indemnity Company, 281 So.2d 724 (La.1973), where a solidary obligation exists, as in the case of an insured and his liability insurer, a timely suit filed against either of these solidary obligors interrupts prescription as to both of them. La.Civil Code art. 2097. Therefore, the timely suit against Travelers interrupted prescription against its insured, Mr. Foster.
Defendants-appellants, Mr. Foster and Travelers, appealed the jury's determination of his negligence and liability founded upon breach of an alleged duty owed the plaintiff. Mississippi Valley Structural Steel Company likewise appealed the jury's determination of negligence and liability on their part.
Plaintiff-appellee answered the appeal, and asserted negligence and liability on the part of Mr. Hancock and prayed for an increase in the amount of damages awarded. Travelers, as workmen's compensation insurer of Associates, appealed and asked for an alteration in the trial court's judgment to permit it recovery for medical expense payments made subsequent to the trial of this matter.
In regard to the paramount issue of liability on the part of Messrs. Foster and Hancock, and Mississippi Valley Structural Steel Company, we are called upon to consider the propriety of the jury's determination. We must consider whether there is evidence of record which, if reasonably evaluated, would sustain the jury's verdict.
The facts surrounding the accident are: On the aforementioned date, the plaintiff was one of several ironworkers constructing an inverted cone hopper inside a concrete silo, which would upon completion allow calcine coke to dump onto a conveyor belt at the bottom of the silo. During the initial construction stages of the cone, a compression ring or ring girder was erected on a concrete ledge, at the very top of the silo. However, the four-piece compression ring in the silo where the accident occurred did not fit the dimensions of the concrete ledge and it had to be pulled into shape and braces welded to hold it in place. As a result, the top circumference of the cone was slightly out of round. The sides of the cone were then constructed from the top down by connecting several 20-30 foot long steel plates to the compression ring, thereby forming a circle. Each plate had "fit up lugs" which were supposed to match up with corresponding rods on the compression ring. Once the plate was in place, bolts would then be connected to secure the plate until welding took place. In the case at hand, however, the plates did not fit. Often the "lugs" had to be knocked off and rewelded. In addition, the plates *554 often had to be forced into place by the ironworker's own manual force or with the help of a crane which was used to hoist the large steel plates from the floor to the place of installation.
The accident sued on herein occurred as the plaintiff and two other ironworkers were attempting to erect the third plate in the top stage of the cone. Because of the fact that the silo was almost completely enclosed, the crane mentioned above [belonging to the defendant, Mike Queenan, and operated by the defendant, Rick Queenan] was situated outside the silo with a line dropping from the silo top to the floor where the steel plates were connected. Because the ironworkers were on scaffolds about 28 feet high, hand signals were utilized by the plaintiff to the ironworker [labor steward] in charge on the ground inside the silo. This ironworker, in turn, would then transmit the signal given to the crane operator via walkie-talkie.
At the time of the accident herein, the steel plate in question had been raised to the level where plaintiff and his co-workers had tried to force it into place. Several bolts and lugs were secured on one end of the plate and the crane cable was then attached to the other end to help pull (force) the plate into place. The signal to begin raising the plate was given and received by the crane operator. Immediately thereafter, plaintiff began to hear the attached bolts or lugs on the other end give way, so he gave the signal to stop the hoisting and started yelling. The crane operator did not receive the signal sent and the plate which continued to be hoisted snapped away from the compression ring, striking the plaintiff and knocking him from the scaffold onto the floor. Simmons was very seriously injured by the fall.[1]
The issue of Mississippi Valley Structural Steel Company's negligence is decided upon the following facts. Plaintiff's employer, Associates, entered into a general contract with the Lake Charles Harbor and Terminal District for the construction of a calcine coke bulk handling facility. Associates originally sub-contracted the installation of the conical hopper bottoms to Suwanee Construction Company and Pridgen Engineering Company. The Pridgen Engineering Company sub-contracted the fabrication of the steel plates for the hopper cone to defendant-appellant herein, Mississippi Valley Structural Steel Company (hereinafter referred to as "Steel Company"). A drawing for the preparation of the steel plates was made by Pridgen Engineering Company and submitted to the Steel Company. From this drawing, shop plans were made by the Steel Company and materials were fabricated in accordance with these plans in Chattanooga, Tennessee. The materials were then shipped by rail to the job site west of Lake Charles, Calcasieu Parish, Louisiana.
Between the commencement of the silo work and the date of the accident, Suwanee Construction Company defaulted on its contract, and Associates undertook to complete the installation of the silo hoppers.
As fabricator of the materials used, the Steel Company fabricated and furnished compression rings which were installed on ledges, around the circumference of the upper portion of the silo walls. Upon these rings, the steel segments of the hopper cone were to be affixed.
Much evidence was presented concerning the alleged negligence of the steel company in misfabricating the compression rings and conical steel segments. It was plaintiff's position that faulty fabrication of these compression rings precluded their installation in the manner intended, thereby causing an irregular radius to result, which, in turn, prevented the safe and effective installation of the cone segments of the hopper.
The Steel Company, on the other hand, asserted that any accident arising out of *555 the installation of their materials resulted from negligence or fault on the part of those taking part in these labors, as well as from an attempt to use these plates in a manner for which they were never intended. The Steel Company also relied upon the theory of proximate cause to exonerate or absolve itself from any possible liability. In its opinion, the proximate cause of the plaintiff's injuries was the failure of the crane operator to cease his lifting maneuver.
The Steel Company asserted it was only a fabricator of the steel, had shipped its product to the job site, and exercised no control, direct or indirect, over any of the working conditions or the methods of erection utilized. The Steel Company maintained that the legal cause in fact of this accident was excessive strain placed on the steel plate by the crane after the crane operator failed to receive the normal stop and emergency stop signals transmitted, or attempted to be transmitted, by Herman Vizena.
We are unable to find evidence of record which preponderates in favor of the Steel Company's position. It is apparent much evidence was adduced as to the unsuitability of the materials furnished by the Steel Company. Numerous witnesses testified as to the difficulties which attended the attempted installation of the segmented plates, as well as the former installation of the conpression rings.
Mr. Gaylord Cox, a professional engineer, testified on behalf of the plaintiff and stated that the detail drawings of the Steel Company were erroneous. It was his opinion that the compression rings were made about ten and a fraction inches too long for the circumference of the silos. He testified that the segmented plates were within the allowable standards as set out by the American Institute of Steel Construction, but the compression rings were not. He further stated that the clips, or connecting lugs, were not sufficiently welded to the plates and were of a smaller gauge steel than should have been employed.
Because of the difficulty attendant to the installation of the compression rings, angle irons were employed to correct the out-of-round condition of the rings. Due to these angle irons, the handrails which had been affixed to the scaffoldings had to be removed in order that the workmen could more effectively work.
It is clear that the materials furnished by the Steel Company were used by the installation crew in the manner for which they were intended, but that these materials were below the standards required for this job. It cannot be said that the use to which they were put was unexpected, nor that the materials were taxed beyond the limits of their intended endurance.
The Steel Company was placed on notice of the difficulties arising out of the attempted installation of the compression rings much in advance of the accident's occurrence. (Joseph C. Hilbert, Sr., sales manager of the Steel Company, was contacted in regard to the difficulties of installation on October 16, 1970.) There is also evidence of record that Associates' account was credited by the Steel Company by reason of a reduction in price of these materials due to their unsuitability for the job.
There is testimony of record that, had the plates fitted well, they would have taken from 20 to 30 minutes each to install. However, on the day of the accident, during the course of some 5½ hours, the workers had not yet installed three plates, the installation of the plates requiring more straining, pushing, and pulling than ordinarily should have been required. We conclude that the Steel Company's misfabrication of these materials required excessive straining and constituted an initial cause of this accident and a legal cause contributing to the injuries suffered by plaintiff.
*556 In reviewing the jury's determinations in this action, regarding Messrs. Foster and Hancock, we have been guided by the recent expression of the Louisiana Supreme Court in the case of Canter v. Koehring Company, 283 So.2d 716 (1973). The Court directly addressed itself to the guidelines we are to allow in cases of this nature. In Canter, supra, the criteria set out in the case of Adams v. Fidelity & Casualty Company of New York, 107 So.2d 496 (La.App. 1st Cir., 1958), were adopted as the true measure of liability.
In tracking these criteria we find there was a definite duty imposed upon the employer, Associates, to provide safe working conditions for its employees. As to the delegation of this duty by the employer to the defendants, Messrs. Foster and Hancock, difficulties of application arise. The record does not support the finding of a delegation of complete duty for providing a safe working area to Mr. Hancock. This duty, however, was imposed upon Mr. Foster, and we have concluded that the record does support a breach of this duty.
The record supports the conclusion that the scaffolding utilized was found acceptable to the ironworkers involved in this undertaking. Although there is some testimony to the contrary, the ironworkers did approve of the use of the portable radios for means of communication during the installation procedure prior to the accident.
Testimony of Mr. Hancock, Warren Chapman, the project superintendent, and Wilfred Hebert, the business agent for the local ironworkers union, established that Mr. Hancock cooperated completely with the demands made for safe working conditions by the workers. Mr. Hebert testified that he had only been consulted in regard to the lack of lighting in the silo area, and that upon approaching Mr. Hancock with this problem it was immediately corrected. Mr. Chapman testified that complaints were not made in regard to the radios, nor were working conditions other than as consented to and found acceptable by the ironworkers.
In regard to the third requirement of Canter, supra, i. e., having breached a duty to an employee through personal fault, we do not find evidence of such a breach in regard to Mr. Hancock's duty of care. The evidence preponderates in favor of the proper functioning of the portable radios prior to the accident. With this in mind, we find Mr. Hancock could have had no actual knowledge of any risk created by improper functioning of the radios, and, accordingly, could not have avoided that risk of harm before the actual time of the harm's occurrence.
Insofar as the ambit of duty imposed by Mr. Hancock's employment, the jury did not err in finding him free from negligence in the performance of his obligation to provide reasonably safe working conditions for the ironworker employees. There is sufficient evidence of record to support the jury's verdict that Mr. Hancock acted reasonably within the scope of his duty and had no personal, actual, or constructive knowledge of the alleged defect in the radios at the time of the accident.
There is sufficient evidence upon which the jury could have determined Mr. Foster's negligence. As vice-president in charge of this job he was given full responsibility for its completion. He visited the accident site at least once a month during the time period prior to the accident, and was apprised of the difficulties being encountered in the installation undertakings.
Mr. Henry Pruitt, a vice president of Associates, testified that Associates did have a safety director in Miami, Florida, whose duties consisted of making visits to the different job sites and establishing safety measures. Mr. Hancock testified that the safety director never did visit the *557 job site in Lake Charles, nor did Mr. Foster ever request the safety director's presence.
In light of the numerous employees, the various labor crafts represented and the complexities of this type of endeavor, the jury had ample grounds to find Mr. Foster negligent in failing to require a safety director to oversee the initiation and maintenance of adequate safety measures. In addition to having provided no safety director, other than a pre-job conference involving sub-contractors, there was never any safety meeting held prior to commencement of the actual work. However, safety meetings were regularly held subsequent to the accident. Wilfred Hebert further corroborated Mr. Foster's dereliction. He testified that Associates was contractually in charge of the project and had the authority to establish safety regulations and procedures.
Under traditional theories of negligence, we conclude that Mr. Foster was negligent in failing to take proper action under the circumstances at hand. Therefore, the jury had adequate evidence before it to derive a conclusion that Mr. Foster failed to fulfill his obligations to the plaintiff and was consequently liable.
Having resolved the question of liability, we now consider the issue of damages. We find the jury award inadequate for the damages sustained by the plaintiff. In regard to compensation for lost future earnings, the award is insufficient.
In computing lost future earnings and plaintiff's future ability to work we have relied upon the testimony of Drs. William G. Akins, Jr., and Edmond C. Campbell, both orthopedic surgeons who were familiar with plaintiff's condition. According to their testimony, plaintiff is 45% to 50% totally disabled in the use of his right arm, 25% totally disabled in his left arm, and 10% to 15% disabled in his right knee as a result of this accident. Neither doctor believes plaintiff will ever again be physically able to undertake successfully the labors required of an ironmaker.
There was testimony of record by Dr. George E. Hearn, psychologist and expert voactional specialist, who testified, solely from materials furnished him by defendants, in regard to plaintiff's suitability for future employment. While we cannot say with accuracy to what extent this testimony influenced the jury's award, we do feel that the jury, perhaps, relied too heavily on Dr. Hearn's testimony. This is especially so in light of the doctor's having never personally interviewed nor consulted plaintiff. The doctor, in drawing his conclusions as to plaintiff's physical ability to work, did so without knowledge of plaintiff's attempt to work as a welder for a period of two months, ultimately ceasing such undertaking because of his physical inability to continue.
On the basis of the American Experience Mortality Table (La.R.S. 47:2405) submitted by plaintiff, the life expectancy of plaintiff is approximately 37 years. Plaintiff was 25 years old at the time of this accident and had averaged more than $10,000 per year for the last three years as an ironworker. Predicated upon decedent's age, earnings, and life expectancy, we believe an award of $115,000 for lost future wages to be adequate. This amount, if invested at 6% interest for 37 years, would approximate the earnings lost. Also influencing the amount of this award is evidence of record which demonstrates that plaintiff will be able to work, to at least some extent, in the future.
The award of $132,500 is believed adequate to compensate for pain and suffering and special damages (amounting to $39,520.19) and is accordingly affirmed. Therefore, we increase the total damages award to $247,500.
In regard to the issue of benefits paid subsequent to the judgment, we have previously noted that intervenor, Travelers, prayed for all amounts which might become *558 due by it in the future, both in weekly benefits and medical expenses. The trial court's judgment awarded all $49 weekly workmen's compensation payments recoverable by intervenor up to the time of payment of the judgment, but did not specify any recovery for future medical expenses paid on behalf of the plaintiff.
It is plaintiff-appellee's argument that since its recovery did not encompass an award for future medical expenses, these expenses may be recovered by intervenor, Travelers, only by subsequent suit filed against the tortfeasor. In the case of Collins v. Toye Bros. Yellow Cab Co., 183 So.2d 396 (La.App. 4th Cir. 1966), the court of appeal held that medical expenses, paid by intervenor-compensation carrier, could not be deducted from the damages awarded plaintiff (he had not sued for medical expenses), and were to be recovered from the defendant-tortfeasor.
Here, we note plaintiff did not seek nor recover future medical expenses and, therefore, intervenor-Traveler's remedy would be to institute suit against the tort-feasors to recover any and all sums paid as future medical expenses on behalf of the plaintiff.
We do not find the case of Hall v. Hartford Accident & Indemnity Company, 278 So.2d 795 (La.App. 4th Cir. 1973), apposite. While the Hall case, supra, recognizes the right of the intervening insurer to obtain reimbursement for all amounts paid as workmen's compensation benefits, including those paid subsequent to the date of the judgment of the trial court, this does not apply to the instant case where we are concerned with medical benefits. Plaintiff has not received an award for future medical expenses against the defendants in the trial court and, therefore, would in actuality be paying these same expenses out of his own pocket if a payment to Travelers was required.
Under the judgment of the trial court, Mississippi Valley Structural Steel Company, Randolph M. Foster, and Travelers Insurance Company were cast in solido for the damages awarded plaintiff. We believe this to be incorrect, as Mississippi Valley Structural Steel Company and Randolph M. Foster were the only actual tort-feasors and, as such, solidary obligors. The judgment is, therefore, amended to hold Mississippi Valley Structural Steel Company and Randolph M. Foster liable in solido. As insurer of Randolph M. Foster, Travelers Insurance Company is bound in solido with him up to the limits of and pursuant to its contract of insurance.
For the above and foregoing reasons, the judgment of the trial court is amended to increase the award to the amount of $247,500. As joint tortfeasors, Mississippi Valley Structural Steel Company and Randolph M. Foster are liable in solido. Travelers Insurance Company is solidarily liable with Randolph M. Foster up to the limits of its policy. As amended, the judgment is affirmed. Appellants are to pay all costs of this appeal.
Amended and affirmed.
CULPEPPER, J., dissents and assigns written reasons.
CULPEPPER, Judge (dissenting).
I cannot agree that either Mississippi Valley Steel Company or Randolph Foster is liable.
As to the defendant, Mississippi Valley Structural Steel Company, it manufactured the large steel plates. They were approximately 18 feet long and 20 feet wide and were made of 3/8 inch steel plate. One of these was being installed at the time of the accident. The steel company had no control over and no duty with regard to the installation.
Even assuming that some of the plates, including the one involved in the accident, were not contoured so as to fit perfectly in place, this was not a legal cause of the accident.
*559 All of the witnesses agreed that steel plate, as distinguished from structural steel, is flexible. It usually must be bent to fit into place. The procedure being used here was customary, i. e., lugs or clips were being applied to hold the plate in place until the seams between the plates could be welded. This procedure had been used on this particular job up until the time of the accident, and was used after it.
The fact that this particular plate had to be attached with lugs and then pulled into place with the crane was not what caused this accident. The cause of this accident was that the radio failed. The crane operator did not get the radio signal to stop lifting and as a result the crane pulled the plate loose from the lugs. The plate fell off and struck plaintiff and knocked him from the scaffold. If the radio had worked, the accident would not have occurred.
Stated in terms of the duty-risk approach used in our recent Supreme Court decisions, Hill v. Lundin Associates, Inc., 260 La. 542, 256 So.2d 620 (1972) and cases cited therein, the duty not to manufacture defective materials does not protect against the risk that workmen while installing such materials may be injured by some cause unrelated to the defect.
Under the test the majority uses, all suppliers of construction materials which are not perfectly made will be liable for injuries to workmen engaged in normal procedures for using such materials, regardless of what causes the injury. For instance, if a pre-fabricated wooden door is too long, requiring a carpenter to use an electric saw to shorten it, and the saw breaks due to some cause unrelated to the door and injures the carpenter, he can recover from the manufacturer of the door.
As to the defendant, Randolph M. Foster, the evidence shows he was a vice president of Nat Harrison Associates, Inc., a large Florida-based construction company, which was the general contractor on the job. Foster had general administrative responsibility for this particular job, but his duties required that he be at the jobsite only about once a month. He had not been on the jobsite for several weeks prior to the accident. He did not have personal responsibility for the details of the work. These details were delegated to Irvin Hancock, the project manager, who was on the job every day. The jury found Hancock free of negligence.
It is my view that plaintiff has failed to show Mr. Foster meets the four criteria established for liability of executive officers under Canter v. Koehring Company, La., 283 So.2d 716, at page 721 (1973). Assuming that the first two criteria are present, i. e., (1) that Nat Harrison Associates, Inc., as general contractor, owed a duty to furnish reasonably safe working conditions to all workmen, and (2) that this duty was delegated to Foster as vice president in over-all charge of this particular job, it is not shown that Foster breached this duty through any personal fault which could be the basis of criteria (3) or (4).
Foster employed Hancock as project manager and delegated to Hancock the personal duty to see that reasonably safe working conditions existed. In this regard, the evidence shows that Hancock consulted with the iron workers and they mutually agreed on the procedures for installing these steel plates and the method of using hand signals and walkie-talkie radios to communicate with the crane operator. The jury found Hancock free of negligence, which means they found no breach of his duty to furnish safe working conditions. If there was no breach of duty by Hancock, then I cannot see how there was a breach by Foster, unless Hancock was incompetent. But the evidence does not show, and the jury did not hold, Hancock was incompetent.
It is my view that criteria (3) and (4) from the Canter case, La., 283 So.2d 716 at page 721, are completely lacking as to Foster.
For the reasons assigned, I respectfully dissent.
NOTES
[1] The jury exonerated Rick and Mike Queenan of any liability for plaintiff's injuries, and their negligence is not urged on appeal.