327 So.2d 146 (1976)
Jewel HORNSBY, Plaintiff and Appellee,
v.
Edward RAY et al., Defendants and Appellants and Appellees.
No. 5088.
Court of Appeal of Louisiana, Third Circuit.
January 22, 1976.
Concurring Opinion January 26, 1976.
Rehearing Denied March 4, 1976.
Writs Refused April 27, 1976.
*148 Olivier & Brinkhaus by Armand J. Brinkhaus, Sunset, Walter Hunter, Jr., Alexandria, for defendants and appellants and appellees.
Dubuisson, Brinkhaus, Guglielmo & Dauzat by James T. Guglielmo, Opelousas, for plaintiff-appellee.
Voorhies & Labbé by Mark Bienvenu, Lafayette, for defendant-appellee.
Before HOOD, CULPEPPER, DOMENGEAUX, GUIDRY and PAVY, JJ.
CULPEPPER, Judge.
This is a tort action for damages for personal injuries. The plaintiff, Mrs. Jewel Hornsby, was working as a nurses' aide at the Headstart Center in the town of Sunset, Louisiana. A rotten portion of the floor gave way when she stepped on it. Her right leg went through the broken floor, causing the injuries for which damages are sought. The defendants are: (1) Mr. Edward Ray, in his capacity as owner and lessor of the building; (2) Rockwood Insurance Company, liability insurer of the executive officers of Tri-Parish Progress, Inc., which was plaintiff's employer and the lessee of the building. The employer's workmen's compensation insurer, Continental Casualty Company, intervened seeking reimbursement for compensation benefits paid to plaintiff. Mr. Ray, as owner-lessor of the building, filed a third party demand against Tri-Parish for indemnity or contribution.
The district judge held that as owner and lessor of the building, Mr. Ray was liable to the plaintiff for damages in the sum of $36,558. He held that Rockwood Insurance Company, as liability insurer of Mrs. Betty Bryant, an executive officer of Tri-Parish Progress, Inc., was jointly liable with Ray to plaintiff to the extent of its coverage in the sum of $10,000. The intervention of the workmen's compensation insurer for reimbursement in the sum of $16,477 was recognized. All other claims and demands were rejected. The defendants, Edward Ray and Rockwood Insurance Company, appealed. Plaintiff answered the appeal, seeking an increase in the award.
The issues on appeal are: (1) Is Edward Ray liable as owner-lessor of the building, absent an agreement whereby Tri-Parish, as lessee, assumed responsibility? (2) Did the lessee, Tri-Parish, assume responsibility for the condition of the premises? (3) Is Rockwood Insurance Company liable as insurer of Mrs. Betty Bryant, an executive officer of Tri-Parish?
The accident occurred on April 14, 1970 in a building in Sunset being utilized as a "Headstart Center". Mrs. Hornsby was entering the back door of the structure and had taken one or two steps inside the building when a wide, rotten board in the floor gave way and her right leg slipped through to the ground below.
At the time of the injury, Mrs. Hornsby was employed as a "nurse's aide" in the Headstart program. Her employer was Tri-Parish Progress, Inc., a Federal government-sponsored organization which operated under the auspices of the Office of *149 Economic Opportunity and later the Department of Health, Education and Welfare. This organization operated in a three-parish area. Mr. Peter Vallot was its executive director. He was in charge of its general over-all administration and was especially concerned in its fiscal aspects. Subordinate to him was Mrs. Betty Bryant, who was the director of Headstart for St. Landry Parish. The defendant-appellant, Rockwood Insurance Company, insured Mrs. Bryant as an executive officer of Tri-Parish.
The building, which was about ten years old, had been leased as a Headstart Center since the program started. The leased premises were owned by Mr. Edward Ray, who was also a member of the Board of Directors of Tri-Parish. Several successive leases had been in effect over the years. The lease in effect at the time of Mrs. Hornsby's injuries was written and dated September 8, 1969 for a term of eight months at a rental of $100 per month. The written lease contained no provision whereby the lessee assumed responsibility for the condition of the premises.
Several months after this lease had been in effect, Mr. Ray discovered that under certain Federal regulations he could not continue to lease the building to this organization of whose Board of Directors he was a member. He requested that the lease be terminated and Ray contends that he and the Board of Directors finally agreed that since no other building was available, and the school year was almost ended, the Headstart Center could remain in the building, but the lessee agreed to assume all responsibility for the condition of the premises. Tri-Parish did remain in the building and thereafter Mrs. Hornsby's injuries occurred.

RAY'S LIABILITY AS OWNER
The first issue is whether Ray is liable as owner of the building, absent a contract whereby the lessee assumed responsibility for its condition. Applicable here is LSA-C.C. Article 2322, which provides:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
As used in Article 2322, "ruin" has reference to actual fall or collapse of a building or one of its substantial component parts, and the owner is liable to anyone lawfully on the premises. Davis v. Royal-Globe Insurance Company, 257 La. 523, 242 So.2d 839 (S.Ct.1970). A wooden front step has been held to be such a substantial component part and it is of no consequence under this article that the owner neither knew nor should have known of the defect. Crawford v. Wheless, 265 So.2d 661 (2d Cir. 1972). In the present case, the floor of the building is certainly a "substantial component part". Clearly, Mr. Ray is liable under Article 2322 for damages for the defective floor, absent an agreement whereby the lessee assumed responsibility.

LESSEE'S ASSUMPTION OF RESPONSIBILITY FOR PREMISES
LSA-R.S. 9:3221 provides:
"The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time."
The testimony is overwhelming that after Mr. Ray became aware of his conflict of interest in renting the building and concurrently serving on the Board, the existing lease was changed and a new contract *150 was made. Mr. Ray wanted Tri-Parish out of his building, so that he could continue serving on the Board. He felt he could be of greater benefit to the organization as a director than as a lessor. However, because the fiscal year was almost at an end, and because he did not wish to force Tri-Parish to abandon the building when another would be difficult to find, he agreed to allow them to remain until another suitable structure could be found, provided the lessee assumed all responsibility for the condition of the premises. The Board of Directors of Tri-Parish agreed to this condition. Several members of the Board and the Secretary of the Headstart program so testified. There is no testimony to the contrary.
Corroborating the fact that the lessee assumed responsibility for the condition of the premises, is a resolution adopted by the Board of Directors of Tri-Parish after plaintiff's accident, that Tri-Parish accept responsibility for any damages sought in plaintiff's suit. We do not give effect to this resolution as a contract to indemnify Ray, but it is corroborative of the Board's previous action in assuming responsibility for the premises.
We note here that the original lease was written but the modification thereof was oral. Nevertheless, our law recognizes that any contract may be later modified, abrogated or revoked by consent of the parties. Prisock v. Boyd, 199 So.2d 373 (2d Cir. 1967). And a written contract may be modified by oral agreement, provided the original contract was not required to be in writing. WWOM, Inc. v. Grapes, 181 So.2d 289 (4th Cir. 1965).
An agreement for the lessee to assume liability is allowed by LSA-R.S. 9:3221. Hebert v. Valenti, 235 So.2d 193 (4th Cir. 1970). And it may be either oral or written. Phillips v. Cohen, 183 So.2d 473 (4th Cir. 1966). The written lease involved here contained no agreement that the lessee assume responsibility for the condition of the premises. However, the subsequent oral agreement modified that written contract and became a binding part of it.
The evidence does not show that Mr. Ray either knew or should have known of the defect in the floor. The testimony is in conflict as to whether Ray visited the Center. But he was not notified when repairs were needed and particularly had never been notified of this particular defect. The evidence was conclusive, though not uncontradicted, that the defect in the floor was a latent one. Several witnesses stated that they had never noticed the floor shaking or being weak. Only one witness stated she had noticed the weak floor prior to the accident.
We conclude that under LSA-R.S. 9:3221, the lessee assumed responsibility for the condition of the premises, and that the owner, Mr. Ray, is not liable for the injuries to plaintiff. Having decided Ray is not liable, it is unnecessary for us to consider his third party demand against Tri-Parish for indemnity or contribution.

ROCKWOOD'S LIABILITY AS INSURER OF MRS. BRYANT
The next issue is whether Rockwood Insurance Company is liable as insurer of Mrs. Betty Bryant, an executive officer of Tri-Parish. Mrs. Bryant was the St. Landry Parish Director of Headstart, one of the programs of Tri-Parish. As such, she was responsible for the total conduct and administration of the headstart program in the parish. She had 16 centers under her supervision. One hundred and eighty-six employees were under her direct control, including social workers, teachers, teachers' aides, nurses, nurses' aides, janitors, cooks and cooks' aides.
The liability of executive officers was discussed at length by our Supreme Court in Canter v. Koehring, 283 So.2d 716 (S.Ct.1973). There the court said that in order *151 to hold an executive officer of an organization liable for personal injuries the following criteria must be met:
"1. The principal or employer owes a duty of care to the third party (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
"2. This duty is delegated by the principal or employer to the defendant.
"3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances  whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
"4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm."
In the present case, the employer, Tri-Parish, did owe a duty of care to the plaintiff. It was required to keep the premises reasonably safe for the children and employees as well as others lawfully on the premises.
The second criteria of Canter is also present. The duty of looking after safety in the Headstart Centers in St. Landry Parish was delegated by Tri-Parish to Betty Bryant. Although she stated it was not in her "job description", she admitted safety was one of her duties.
However, the third and fourth criteria are not met. Mrs. Bryant had no personal duty toward plaintiff. And she had delegated to responsible subordinates the duty to keep the premises safe. She testified that she delegated the responsibility to fire and health inspectors and to supervisors of each center. The supervisor of each center was required to see that needed repairs were made. There is no evidence that Mrs. Bryant was negligent in delegating these responsibilities.
Mrs. Bryant was in charge of the general over-all administration of the program in St. Landry Parish. She reasonably relied on the persons to whom she delegated these duties, for she was unable to perform all of them herself. Reliance on fire and health inspectors was not negligent. Renella Henry, to whom responsibility was delegated at the center here involved, was competent to perform her safety duties. She was head teacher at the school. And though she had had no special training in safety inspection procedure, the duty delegated her was only one of ordinary care. There were no Federally promulgated guidelines. As Mrs. Bryant testified, she did expect Mrs. Henry "to keep her eyes open" for hazards. Meetings were held at least twice a week with supervisors as a follow-up procedure, and the supervisors were required to submit weekly reports.
Mrs. Henry was certainly a proper person to whom to delegate the duty to inspect for safety. There was no money in the program to hire a special person to inspect *152 buildings, and there was apparently no one with any greater authority or ability than she possessed. She admitted her duties included inspection and safety. Further, she performed these duties diligently and efficiently, for immediately after she learned of the defective condition of the floor she warned others of it, and she called a carpenter to repair it.
Mrs. Bryant was not negligent in delegating her duties for safety. Once she had reasonably delegated these duties, the only responsibility remaining was to see that defects of which she knew or should have known were repaired. Canter v. Koehring, supra. There is no evidence that Betty Bryant either knew or should have known of the defective floor. Bertha Mae Dixon was the only person who had noticed the floor was in need of repair. No other witnesses had noticed the defect, although several had walked over the area many times. The plaintiff herself testified she had been over the area at least a dozen times prior to the accident and it just appeared to be an "old clean floor".
We conclude that under the criteria of the Canter case, Mrs. Bryant was not negligent. See also Lyle v. National Surety Corporation, 304 So.2d 743 (3rd Cir. 1974), where a similar result was reached.
Because we find no negligence on the part of Betty Bryant, it is unnecessary to consider the policy exclusion defenses urged by her defendant insurer.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of the defendants-appellants, Edward Ray and Rockwood Insurance Company, dismissing plaintiff's suit. All costs in the trial and appellate courts are assessed against the plaintiff.
Reversed and rendered.
PAVY, J., concurs and assigns reasons.
DOMENGEAUX, J., dissents and assigns written reasons.
PAVY, Judge (concurring).
I agree with the majority opinion in its reasons for releasing the executive officers from liability. I concur in the exoneration from liability of the owner-lessor, Edward Ray, but on a different basis from that stated in the majority opinion.
The evidence does not show that there was any formal assumption of responsibility under R.S. 9:3221 by the board of directors of Tri-Parish Progress, Inc. The trial judge did not so conclude. A fair appraisal of the evidence leads to the conclusion that the board of directors was attempting to excuse Ray from violation of the federal conflict of interest rule so that he could remain on the board and still allow use of the only available building. This is borne out by the very language inserted by Ray in the written lease. This lease was subsequent to and not before the previously described action of the board of directors. That language was substantially to the effect that they (Ray and his wife as lessors) were not in the real estate business and that, if another building became available, the lease could be cancelled. This has nothing to do with responsibility for maintenance or repair and clearly indicates it was designed to provide against a claim of violation of the conflict of interest rule.
In my view, under the very peculiar facts of this case, Ray should be relieved of liability under the rule in Lowe v. Homeowner's Loan Corporation, 199 La. 672, 6 So.2d 726 (S.Ct., 1942), which held that, absent actual negligence on his part, an owner-lessor is not responsible to a third party on the leased premises for injury caused by a condition resulting from the lessee's failure to fulfill his repair obligations legally imposed by Civil Code Articles 2716 and 2717. Even if the language of those articles does not precisely fit the facts of this case, I think there was an implied *153 modification of the legally allotted repair obligations by the parties' conduct generally during the lease and specifically as to the particular defect causing the injury herein. From the very beginning of the lease the lessee's employees actually undertook to and did make all repairs including those similar in kind and degree to that due to be made herein. Specifically, Renella Henry, the head of the program at the Sunset center, called a carpenter to repair the defect, allowed ten days to two weeks to pass without making any efforts to have the repair made by the carpenter earlier, warned some but not all of the individuals using the building of the defect and failed to condemn or sign off the dangerous area. Although a lessee may not be obligated to notify lessor of the necessity for repairs, there is normally an expectation of such which was denied to Ray when the lessee in effect practically arrogated to itself the repairing role. Accordingly, I think it would be unjust to hold Mr. Ray under these circumstances unless he knew or should have known of the defect and I cannot conclude that the evidence preponderately shows any such actual or constructive knowledge.
DOMENGEAUX, Judge (dissenting).
I would affirm the judgment of the District Court.

LIABILITY OF OWNER-LESSOR-DEFENDANT, EDWARD RAY
There is testimony in the record that Mr. Ray visited and inspected the building in question frequently, as often as once a week. Mr. Ray on the other hand indicated that he had not checked the building for two years. This is a fact question. Mr. Ray contends that he was not responsible for the condition of the building and the resulting injuries to plaintiff. He bases this position on the proposition that Tri-Parish had assumed all responsibilities for the condition of the building. (LSA R.S. 9:3221). A careful reading of the record does not bear this out. It is evident that the trier of fact placed little weight on the benevolent efforts of Tri-Parish and some of its board members to protect Mr. Ray. Additionally, a written lease agreement, which was introduced in evidence and considered by the District Judge contains no provision for the assumption of liability of Tri-Parish. But, even if Tri-Parish had assumed such responsibility, Edward Ray (based primarily upon factual findings by the District Judge) should still be liable under C.C. Article 2322. It is my judgment that the facts, as found by the District Judge, do not allow Mr. Ray to seek solace under LSA R.S. 9:3221, in that there is ample evidence in the record to conclude that Mr. Ray actually knew or should have known of the defect on the premises which he had leased to Tri-Parish. Bolstering this conclusion reached by the trial judge is the fact that the building in question was visibly in a state of disrepair and deterioration.

LIABILITY OF DEFENDANT-EXECUTIVE OFFICER, BETTY BRYANT
The trial court concluded, obviously under the guidelines set out in Canter v. Koehring Company, 283 So.2d 716 (La.1973), that Mrs. Bryant imprudently delegated the responsibility of general safety of the building to Mrs. Henry. I would find no manifest error in the findings of the trial court in that regard. The majority finds that the first two criteria of Canter were met but that the last two were not. It is clear that Tri-Parish owed a duty to the plaintiff of keeping the premises reasonably safe for her, for the children in the program, and anyone else legally on the premises. It is also clear that Mrs. Bryant was assigned the responsibility of safety by her employer. She in fact admitted that safety was one of her duties and responsibilities. A reading of the whole record leaves me with the impression that Mrs. Bryant merely gave lip *154 service to her own alleged delegation of that responsibility to Mrs. Henry. Even assuming that Mrs. Bryant delegated her authority in that regard, the overall situation indicates to me that it was not a prudent delegation, and, under the fourth criteria of Canter, she should have known of the generally bad condition of the building, and should have seen to it that the building be made safe. In addition to the Canter case, see Simmons v. Travelers Insurance Company, 295 So.2d 550 (La.App.3rd Cir. 1974); writs refused, 299 So.2d 795.
I suggest that the record establishes that Mrs. Bryant did not carry out her responsibilities in connection with the safety and maintenance of the building in question. She of course attempted to exonerate herself by stating that she had delegated her responsibility to Mrs. Henry and relied upon the health and fire inspectors for the safety of the building. However, there is evidence in the record that she made numerous visits to the building in question while the defective condition existed. For an executive officer to delegate a responsibility to an employee, and then fail to see that the employee carries out this delegated responsibility is negligence in itself if tortious injury results. In Canter it was said:
"If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or malperformance and has nevertheless failed to cure the risk of harm." (Emphasis mine).
Finding no manifest error in the trial court's factual findings I would affirm his determination that Mr. Ray and Rockwood (as executive officer insurer of Mrs. Bryant) are jointly liable herein, with Rockwood's liability being limited to $10,000.00. Reaching this conclusion I would then consider the issue of quantum and find that the amount awarded does not constitute an abuse of discretion. I would further reach the issue raised by Rockwood Insurance Company on its policy exclusion defenses and deny same on the basis of the Louisiana Supreme Court case of Pullen v. Employers' Liability Assurance Corporation, 230 La. 867, 89 So.2d 373 (La.1956). See also Bardwell v. England Transportation Company, 169 So.2d 537 (La.App.4th Cir. 1964).
For the above and foregoing reasons I would affirm the decision of the trial court, and accordingly, I respectfully dissent.